### ROLAND BURBANK *et al. versus* DAVID S. WHITNEY

A bequest here to a foreign corporation is valid.

A bequest for charitable uses to an unincorporated society may be enforced by virtue of *St.* 43 *Eliz. c.* 4, if not independently of that statute, and whether such society transacts its business here or in another State.

Bequest : — " The residue of my personal property I give to my wife, with full power to do with it as she pleases, but whatever she may die possessed of, unless she should otherwise order, I would have equally divided to the several societies " before named. The wife having died before the testator, it was *held*, that the bequest over took effect ; but that it would have been ineffectual in case she had survived the testator.

APPEAL from the court of probate for the county of Hampden.

On the 30th of August, 1832, the Rev. Jonathan L. Pomroy, of Worthington, made his last will, signed in the presence of four witnesses.

After bequests of the testator's library and certain sums of money to some of his friends, the will proceeds : — " To the American Bible Society, to the American Education Society, to the American Colonization Society and to the American Home Missionary Society, I bequeath four thousand dollars,

or one thousand dollars to each society, to be retained as a fund or expended immediately, as the societies shall judge best calculated to promote the intended object. The residue of my property, real and personal, I give to my wife, with full power to do with it as she pleases, but whatever she may die possessed of, unless she should otherwise order, I would have equally divided to the several societies to which, by this my last will and testament, I have made specific bequests."

The testator died on the 28th of May, 1836; and in the following September his will was duly proved and allowed in the court of probate for the county of Hampden, and administration granted to David S. Whitney, named in the will as the executor.

The testator's wife died in September, 1834.

The estate of the testator, at the time of his death, consisted of personal property, chiefly in promissory notes, and real estate in West Springfield. The real estate was conveyed to the testator subsequently to the date of his will, to wit, in 1833 and 1835.

The American Education Society was incorporated in Massachusetts, on the 4th of December, 1816, to aid indigent young men of talents and hopeful piety, in acquiring a learned and competent education for the gospel ministry; and the American Colonization Society, by the State of Maryland, on the 24th of February, 1831, for the purpose of colonizing, with their own consent, on the coast of Africa, the people of color residing in the United States. The American Bible Society and the American Home Missionary Society were, at the date of the will, unincorporated, and are so still, except so far as the character of the former, in that respect, may have been affected by an act of the State of New York, of February 21st 1837, authorizing the society to hold land in that State.

The American Bible Society was established by a convention of delegates from various parts of the country, in 1816, for the purpose of encouraging a wider circulation of the Holy Scriptures, in the common version, without note or comment. The society was then organized and has been in constant operation ever since, its business being principally transacted in

Burbank
v.
Whitney.

the city of New York, where large and commodious buildings have been erected or purchased for the accommodation of its officers, the printing and binding of Bibles and Testaments, and the deposit of books, paper and other materials, the property of the institution. The officers of the society are chosen annually at the annual meeting in May.

The American Home Missionary Society was established and organized by the advice of a convention of persons from all parts of the United States, on the 12th of May, 1826, originally for the purpose of assisting congregations which are unable to support the gospel ministry, and of sending the gospel to the destitute within the United States; and also afterwards, for the purpose of coöperating with evangelical Christians in the support of home missions in other nominally Christian countries. This society has been in constant operation since its first establishment. Its officers are annually chosen ·by the society in May, and the constitution of the society requires that its executive committee shall consist of thirteen persons, residing in the city of New York and its vicinity.

Since the death of the testator the real estate has been leased, from year to year, by the executor, for the benefit of whomsoever it may concern.

On the 5th of September, 1837, the executor presented in the probate court an administration account, in which he credits the estate with personal property amounting to $8676, and charges against it sums applied in payment of debts and the legacies to individuals, and likewise of $1000 paid to the American Colonization Society, $1000 to the American Education Society, and $1000 to the American Bible Society, under the specific clause in the will, and $500 to the American Bible Society, under the residuary clause. The judge of probate decreed that the account should be allowed; whereupon Roland Burbank and others, heirs· at law of the testator, appealed, because the charges are illegal and in derogation of the rights of the appellants.

*Sept. 27th,*
*1838.*

*I. C. Bates* and *Forbes*, for the appellee. The bequest to the American Colonization Society, though a foreign corporation, is valid. A foreign corporation may sue in our courts;

and a remedy implies a right. *Connecticut* v. *Bradish*, 14 Mass. R. 296 ; *Portsmouth Livery Co.* v. *Watson*, 10 Mass. R. 91 ; *Society for Propag. of the Gospel* v. *Wheeler*, 2 Gallison, 105 ; *Silver Lake Bank* v. *North*, 4 Johns. Ch. R. 370 ; *Williamson* v. *Smoot*, 7 Martin, 31 ; *Bank of Marietta* v. *Pindall*, 12 Randolph, 465.

The legacies to the two unincorporated societies are also to be carried into effect. *M' Cartee* v. *Orphan Asylum Society*, 9 Cowen, 484 ; 2 Story on Eq. 390 *et seq.* ; *Philadelphia Bapt. Association* v. *Smith*, 3 Peters, 486 ; *Inglis* v. *Trs. of the Sailor's Snug Harbour*, ibid. 119 ; *Moggridge* v. *Thackwell*, 7 Ves. 73 ; *Beatty* v. *Kurtz*, 2 Peters, 566 ; *Pawlet* v. *Clark*, 9 Cranch, 292. If the members of either society are too numerous to be trustees, the executor is the trustee as to the personal property. *Humphrey* v. *Bullen*, 1 Atk. 458 ; *Rogers* v. *Ross*, 4 Johns. Ch. R. 388 ; *Bartlett* v. *King*, 12 Mass. R. 537 ; *Going* v. *Emery*, 16 Pick. 107. It is a trust to pious and charitable uses, and the Court will sustain it. Com. Dig. *Uses*, *N* 1, *N* 10, *N* 11 ; 2 Story on Eq. 394, note, 411, 415 ; *Bull* v. *Bull*, 8 Connect. R. 50 ; *Coggeshall* v. *Pelton*, 7 Johns. Ch. R. 292 ; *Baptist Association* v. *Hart's Executors*, 4 Wheat. 1 ; *M' Cartee* v. *Orphan Asylum Society*, 9 Cowen, 484 ; *Executors of Burr* v. *Smith*, 7 Vermont R. 241.

As to the residuary clause, the testator clearly intended to dispose of the whole of his estate, and this intention may be carried into effect without violating any rule of law. The wife takes an interest in the property during her life, with a power of disposal, and the property not disposed of by her goes over to the societies. *Gillespie* v. *Miller*, 5 Johns. Ch. R. 21 ; *Westcott* v. *Cady*, ibid. 334 ; Fearne, (7th ed.) 402 ; *Upwell* v. *Halsey*, 1 P. Wms. 651 ; *Moggridge* v. *Thackwell*, 7 Ves. 85 ; Toller, (4th ed.) 303 ; *Ide* v. *Ide*, 5 Mass. R. 500.

But if the personal property would have gone to the wife absolutely, yet as the legacy lapsed by her death, it goes over to the subsequent legatees. 1 Roper on Legacies, 338 ; 2 Roper on Legacies, 453, 458 ; Toller, (4th ed.) 342 ; 2 Swinb. 465, Powell's note.

Burbank
*v.*
Whitney.

*Wells* and *Alvord*, for the appellants. The absolute property in the *residue* was given to the wife, and the limitation over was void. 2 Fearne, (Powell's ed.) 51 ; 4 Kent's Comm. (3d ed.) 270 ; *Scatterwood* v. *Edge*, 1 Salk. 229 ; 2 Wms's Saund. 388, note ; *Att.-General* v. *Hall*, Fitzg. 314, cited in 8 Vin. Abr. 103 ; *Flanders* v. *Clark*, 1 Ves. sen. 9 ; *Butterfield* v. *Butterfield*, ibid. 133 ; *Bradley* v. *Peixoto*, 3 Ves. 324 ; *Ross* v. *Ross*, 1 Jac. & Walk. 154 ; *Jackson* v. *Bull*, 10 Johns. R. 19 ; *Jackson* v. *De Lancey*, 13 Johns. R. 537 ; *Jackson* v. *Robins*, 15 Johns. R. 169, and 16 Johns. R. 537 ; *Merrill* v. *Emery*, 10 Pick. 507. If the remainder over would have been good in case the first taker had survived the testator, yet by her dying before him it lapsed. *Baker* v. *Hanbury*, 3 Russell, 340.

As to the unincorporated societies being capable of taking, they cited *Greene* v. *Dennis*, 6 Connect. R. 293 ; *Dashiell* v. *Att.-Gen.* 5 Harr. & Johns. 392.

*April term 1839, in Hampden.*

WILDE J. delivered the opinion of the Court. This case comes before us on an appeal from a decree of the judge of probate for the county of Hampden, allowing the account of the appellee as executor of the last will and testament of the Reverend Jonathan L. Pomroy, lately deceased.

The appellants are the heirs at law of Pomroy ; and they object to the allowance of sundry charges made by the executor for the payment of legacies in pursuance of the directions in the will. They contend, that these legacies were void in law, and that they were paid by the executor in his own wrong.

The testator, after giving sundry legacies not now in dispute, gave to the American Bible Society, to the American Colonization Society, to the American Education Society, and to the American Home Missionary Society, the sum of $4000, to each society $1000, to be retained as a fund, or expended immediately, as the societies should judge best calculated to promote the interest of the object. The residue of his property is disposed of as follows : " The residue of my property, real and personal, I give to my wife, with full power to do with it as she pleases ; but whatever she may die possessed of, unless she shall otherwise order, I would have equally divided

.o the several societies to which, by this my last will and testament, I have made specific legacies."

The testator survived his wife, and the societies, three of whom have been paid their specific legacies, claim also the rest and residue of the testator's estate, after the payment of all debts and other legacies. The questions are : 1. Whether the executor is to be allowed the amount paid for the specific legacies ; and 2. Whether the societies are entitled to the rest and residue of the estate. The latter question, as well as the former, we are bound to consider, although the societies are not parties, as the executor has paid $500 to the American Bible Society, for which he claims allowance.

Two of the societies mentioned in the will, viz. the American Education Society and the American Colonization Society, are, and were at the date of the will, incorporated societies ; and the other two are not incorporated. Both of these latter societies, however, were organized before the date of the will, by conventions of delegates from various parts of the United States ; the American Bible Society having been organized in 1816, and the other, in 1826 ; and each has been in constant operation ever since its first establishment.

No objection has been made to the specific bequests to the American Education Society, that being a corporation, and having been incorporated by the legislature of this Commonwealth long previously to the date of the will. And, in the opinion of the Court, no valid objection has or can be raised to the validity of the bequest to the American Colonization Society, that also being a corporation, incorporated by the State of Maryland.

In England, corporations are excepted out of the statute of wills, and cannot be directly devisees at law ; yet, by the 43 *Eliz. c.* 4, lands may be devised to corporations in trust for charitable uses. 2 Kent's Comm. (3d ed.) 285.

And by this Court it was decided, in the case of the *Trustees of Phillips Academy* v. *King*, 12 Mass. R. 546, that an aggregate corporation is capable of taking and holding property in trust, if it be not inconsistent with the purposes for which it was incorporated. It appears also to us very clear, that if the executor had refused to pay the legacy in question, an action

Burbank
*v.*
Whitney.

would lie in our courts, in the name of the American Colonization Society, to recover it. In this Commonwealth, actions by foreign corporations have been frequently maintained, and their right to sue in our courts, we think, is unquestionable. The same right has been maintained in New York and several other States. In *Silver Lake Bank* v. *North*, 4 Johns. Ch. R. 370, Chancellor *Kent* remarks, that the objection to such a right is not even plausible.

In regard to the unincorporated societies, there would be more doubt, if the principles and substance of the statute of Elizabeth had not been adopted in this Commonwealth. But it is by no means clear, that the bequests in question would not be held good without the aid of that statute.

It is difficult to ascertain to what extent donations to charitable uses were held valid, and in what manner they were enforced, previous to the statute of Elizabeth. But generally, no doubt, such donations were held valid, if not within the statutes against superstitious uses. And such donations were good, although the charity was to be distributed by a society or body of men who were not incorporated, and although no person was in *esse* who could be the *cestui que use*. In *Porter's case*, the devise was to the testator's wife, to be appropriated for the maintenance and continuance of a free school, almsmen and almswomen forever ; and the devise was held good. 1 Co. R. 22.

But the great doubt has been, whether the Court of Chancery entertained jurisdiction of and enforced trusts for charitable purposes before the statute of Elizabeth ; or whether the jurisdiction of the Court of Chancery in England, in enforcing charities, was exclusively derived from that statute. This question has been recently discussed, with great ability, by Chancellor *Kent*, (2 Comm. 3d ed. 285,) and by Judge *Story* (2 Comm. on Equity, 394) in their Commentaries, by Chancellor *Jones*, in the case of *M'Cartee* v. *Orphan Asylum Society*, 9 Cowen, 437, and by Judge *Baldwin* in the case of Sarah Zane's will, (Circuit Court of Pennsylvania, April term, 1833.) It has been also elaborately and ably discussed in the case of *Burr* v. *Smith*, 7 Vermont R. 241 ; in which a majority of the court decided, that a donation to char-

itable uses, similar to the one now in question, was valid, and could be enforced in chancery without the aid of the statute of Elizabeth.

But notwithstanding the researches and discussions of these eminent judges and jurists, the question still remains involved in some doubt. Chancellor *Kent* is of opinion, that the weight of the English authorities is in favor of an original and necessary jurisdiction in chancery, in respect to bequests and devises in trust, to persons competent to take for charitable purposes, when the general object of the charity was specific and certain, and not contrary to any positive rule of law ; and that it is doubtful whether the English system of charities is to be referred exclusively to the statute of Elizabeth. 2 Kent's Comm. (3d ed.) 287.

Judge *Story* also is of opinion, " that it is clear upon principle, that the Court of Chancery, merely in virtue of its general jurisdiction over trusts, must, in many cases, have a right to enforce the due performance of charitable bequests." 2 Comm. on Eq. 430. Whether such a jurisdiction was claimed and exercised before the statute or not, does not seem very material, if according to the principles of chancery it may now be sustained without the aid of the statute.

This perplexing question, however, is of little practical importance in this Commonwealth ; since it has been settled that the statute of Elizabeth has been adopted in principle and substance in this State. *Going* v. *Emery*, 16 Pick. 107.

There can be no doubt, that the bequests to these unincorporated societies are good and valid under the provisions of the statute of Elizabeth, if not good without the aid of that statute. And we think it equally clear, that the payment of them may be enforced by this Court as a court of equity. By the will a trust was created ; and on the death of the testator the legal estate vested in the executor, and not in the legatees. He held it in trust for them, and was bound to collect and pay over the money according to the directions of he will. And this trust the executor might be compelled to perform by this Court as a court of equity, if he had not performed it voluntarily. These societies have their places of business in the State of New York ; and there the charities are

Burbank
*v.*
Whitney.

to be administered. This Court, therefore, as a court of chancery, would order the money to be paid over to the persons authorized to receive it, leaving it to the local tribunals to see to its due administration. 2 Story on Eq. 430. This is the uniform course of proceeding in the English courts of chancery, where money is bequeathed to charitable uses to be executed in a foreign country. But there is no necessity to resort to a court of equity. The executor has voluntarily paid the legacies ; and, as they were justly due, he is entitled to his claim for allowance so far as relates to the specific legacies. So, if he had refused to pay them, a remedy might be had by a suit on his bond in the name and by the direction of the judge of probate. We are of opinion, therefore, that the defendant is very clearly entitled to allowance for the amount paid for the specific legacies.

Whether he is entitled to allowance for the $500 paid to the Bible Society under the residuary clause in the will, depends on the construction of that clause. And if that might be construed according to the intention of the testator, we should have no doubt that the societies to whom the specific legacies were given, are entitled also to the residue of the personal estate. Whether they are entitled to the residue of the real estate is a question not raised by this appeal, and as to which we give no opinion. The intention of the testatoi, however, as to both the real and personal estate, can hardly be doubted. He intended manifestly to give to these societies all his wife should leave undisposed of, and the whole, if no part should be disposed of by her, or in case the estate should never vest in her. She was the first object of his bounty ; but if the devise to her should fail, then, we think, he intended the estate should go to these societies, to be distributed to charitable uses.

But it is objected, that whatever might have been the intention of the testator, the whole rest and residue of the estate was devised to his wife, and that the limitation over to the societies was void, and could not take effect, either as a contingent remainder or an executory devise. This objection is sustaineq by the case of *Ide* v. *Ide*, 5 Mass. R. 500. In that case the devise was to the testator's son Peleg, his heirs and assigns, of certain real and personal estate, with the following clause ·

" And further it is my will, that if my son Peleg shall die and leave no lawful heirs, what estate he shall leave to be equally divided between my son, John Ide, and my grandson, Nathaniel Ide, to them and their heirs forever." This limitation over to John and Nathaniel, was held void, as inconsistent with the absolute unqualified interest of the first devisee. Chief Justice *Parsons* lays it down as an established rule, that whenever " it is the clear intention of the testator, that the devisee shall have an absolute property in the estate devised, a limitation over must be void, because it is inconsistent with the absolute property supposed in the first devisee. And a right in the first devisee to dispose of the estate devised, at his pleasure, and not a mere power specifying who may take, amounts to an unqualified gift."

The same decision was had in a similar case, *Attorney-General* v. *Hall*, Fitzg. 314. There the devise was of real and personal property to A. and his heirs ; and if A. should die leaving no heirs of his body living, then so much as he should be possessed of at his death, to B. This limitation over to B. was held void. This case is cited by Lord *Hardwicke*, with approbation, in *Flanders* v. *Clark*, 1 Ves. sen. 10. He says the case is well reported, though the book is not one of authority.

The law as laid down in these cases has been recognised as the settled law of property in the State of New York, in the case of *Jackson* v. *Bull*, 10 Johns. R. 19, and in *Jackson* v. *Robins*, 15 Johns. R. 169. In the latter case a writ of error was brought, and after an able and elaborate discussion, the former judgment was affirmed. The plaintiff's counsel attempted to establish a distinction between real and personal property. But they admitted, that the doctrine as above stated, was well established as to personal property, by all the authorties ; and that a power to sell annexed to a bequest of a chattel for life, makes the gift absolute and renders void an ulterior bequest.

These cases are cited by Chancellor *Kent* in his Commentaries, and he considers the law, as laid down therein, as well settled. A valid executory devise, he remarks, cannot subsist under an absolute power of disposition in the first taker. 4 Kent's

Comm. (3d ed.) 270.   These authorities, we think, fully sup-
port the objections made to the validity of the limitation over
after the bequest to the testator's wife.   But as she did not
survive the testator the estate never vested in her ; and this
circumstance, we think, lets in the ulterior bequest.   In *Shef-
field* v. *Orrery*, 3 Atk. 287, Lord *Hardwicke* says, that it is
clear and certain, that no limitation over of a personal thing
can be admitted after a dying without issue generally ; but if
this is confined within a life or lives in being, or if limited on
a contingency to a person who never takes, the limitation is
good.   This, he says, has been determined in many cases, and
particularly in *Higgins* v. *Dowler*, 2 Vern. 600 ; *Stanley* v.
*Leigh*, 2 P. Wms. 686 ; and *Sabbarton* v. *Sabbarton*, Cases in
Lord Talbot's Time, 55.   In *Higgins* v. *Dowler*, Alice Hig-
gins, possessed of a term for 999 years, demised to J. S. for
860 years, in trust for herself for life ; then to her son Henry,
for life, remainder to his wife, for life ; then to their first son,
during the residue of the term, and in default of issue of such
son, to their second and other sons ; and, in default of issue
male, then to their daughters, for the remainder of the term.
It was held, that as there never was any son, but only a daugh-
ter, the limitation to the daughter was good.   The same case
is reported in 1 P. Wms. 98 ; and it is there said, that Lord
*Cowper* held with great clearness, that if the limitation in tail
ever vested, the limitation over would be void ; but as that
never vested, the limitation over to the daughter was good.
The same point was fully discussed and decided in the same
way in *Stanley* *.* *Leigh*, 2 P. Wms. 686.   There are sever-
al other cases which recognise the same principle.   *Gower* v.
*Grosvenor*, Barnardist. Ch. R. 54 ; 8 Viner's Abr. 103 ;
*Wood* v. *Saunders*, Pollexf. 35.

Fearne considers the principle of these decisions as well set-
tled.   It was formerly held, he remarks, that wherever the
first limitation conveys the whole estate, there any subsequent
limitation was void, notwithstanding the preceding limitation
never took effect.   But this doctrine has been long since de-
nied ; and it is now settled, that if the preceding limitation,
which would carry the whole interest, should not vest, the sub-
sequent limitation may be good.   Fearne, (7th ed.) 517.

This point being then settled by authority, and, as we think, upon a just and reasonable distinction, we cannot doubt, that the bequests under consideration are valid, and that there is no technical difficulty in the way to prevent the intention of the testator from being carried into effect. That intention manifestly was, that the property bequeathed in the first instance to the wife of the testator, should be distributed for charitable purposes, in case she did not otherwise dispose of it. It has been argued, that the limitation over to the societies depended on the condition, that the property should first vest in the wife subject to her disposal. But we do not think that any such intention can be inferred from the language of the will. If such had been the testator's intention, it must be presumed that he would have altered his will after the death of his wife.

The rule of construction applicable to the residuary clause is correctly stated in 6 Cruise's Dig. *tit.* 38, *c.* 20, § 11. If a devise is made upon a contingency, annexed to a preceding estate, if that estate shall never take effect, the remainder over will nevertheless take effect, the first estate being considered only as a preceding limitation, and not as a preceding condition.

Without, however, relying on any rule of construction, we cannot doubt, that the intention of the testator was such as has been already stated. The result is, that the $ 500 paid by the defendant under the residuary clause must be allowed, as well as the specific legacies.

*Decree of judge of probate affirmed.*