# Hempstead et al., Trustees et al., *v.* Meadville Theological School et al., Appellants.

*Appeals—Amendment to pleadings—Admitted facts.*

1. The Supreme Court will allow an amendment to a pleading where the only effect will be to make it accord with an admitted fact.

*Corporations—Charities—Transfer of assets to another corporation—Equity—Injunction.*

2. The board of trustees of an eleemosynary corporation has no right to voluntarily give away the assets they are selected to administer, and will be enjoined from so doing, even though the transfer is intended to be to a corporation of another State, chartered for the same purpose, and the object of incorporation can be better accomplished by the proposed transfer.

*Corporations—Place of business—Corporate functions—Application of charter—Act of April 29, 1874, P. L. 73.*

3. By the word "business," as used in the provision of the Corporation Act of 1874, requiring applications for charters for corporations to state "the place or places where its business is to be transacted," is meant the place or places where the corporate functions are to be performed, and has no relation to the place or places where the employees of the corporation perform the work assigned to them.

*Corporations—Acts within the state—Acts without the state—Charitable corporation—Educational institution—Discretion.*

4. While, as a general rule, strictly corporate acts must be performed within the State of incorporation, this only means such acts as relate to or concern the existence of the corporation.

5. A corporation may act through its officers and other agents in any state or country, just as a natural person may, unless there are charter or statutory restrictions or limitations to the contrary, either in the state of incorporation, or in such other state or country.

6. The board of trustees of a Pennsylvania eleemosynary educational corporation, may, in the exercise of a sound discretion, provide for the education of the students in such other state or country, not objecting thereto, as will enable the purpose of the trust to be best effectuated.

Argued May 19, 1925. Appeal, No. 32, Jan. T., 1926, by defendants, from decree of C. P. Crawford Co., May T., 1924, No. 1, for plaintiffs on bill in equity, in case of E. A. Hempstead et al., Trustees of Meadville Theological School, Elizabeth H. Kidder et al. v. Meadville Theological School, and Franklin S. Southworth et al. Before FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Decree modified.

Bill for injunction. Before PRATHER, P. J.
The opinion of the Supreme Court states the facts.
Decree for plaintiffs. Defendants appealed.

*Error assigned* was, inter alia, decree, quoting record.

*Owen J. Roberts,* with him *Charles H. Strong, John O. McClintock* and *Walter J. McClintock,* for appellants.—The authorities sanction removal where the circumstances warrant it: Myers v. Crick, 271 Pa. 399; Mercer Home, 162 Pa. 232; Nauman v. Weidman, 182 Pa. 263; Kimberly's Est., 249 Pa. 483; Avery v. Home for Orphans, 228 Pa. 58; Franklin St. Church, 249 Pa. 275.

The law of Pennsylvania does not require the Board to carry on this school forever in Meadville without regard to the educational advantages or disadvantages thereof.

The proposed removal of the educational activities to Chicago will not in any sense whatever destroy the corporation: Cowell v. Springs Co., 100 U. S. 55; Com. v. Pauline Home, 141 Pa. 537; Bethlehem Boro. v. Fire Co., 81 Pa. 445.

*Frank J. Thomas,* of *Thomas & Thomas,* with him *Otto Kohler,* for appellees.—In no corporation, can the directors, trustees or managing authorities dispose of the assets of the corporation so as to deprive their par-

ticular corporation of the means of accomplishing the purposes for which it was incorporated: Langolf v. Seiberlitch, 2 Pars. Select Eq. Cases, p. 64; Temperance Assn. v. Friendly Society, 187 Pa. 38; Library Hall Co. v. Pittsburgh Assn., 173 Pa. 30; Carter v. Oil Co., 164 Pa. 463; Bedford R. R. Co. v. Bowser, 48 Pa. 29; McCurdy v. Myers, 44 Pa. 535.

A corporation exists until its charter period has expired or the court has decreed its dissolution. It cannot be destroyed by transferring the property of the corporation to another, especially a foreign corporation, for the purpose of having it step into the shoes of the former.

A corporation has no power to remove its activities wholly from the place of its incorporation, when incorporated and domiciled at a given place. Such removal cannot even be made to another place in the same jurisdiction of its incorporation without first amending its charter: Enterprise Mutual Beneficial Assn., 10 Phila. 380; German Brethren Church, 12 Pa. Dist. 497; Mountain Sharon Cemetery Co.'s Case, 3 Pa. D. & C. 179; Thiel College's App., 216 Pa. 630.

OPINION BY MR. JUSTICE SIMPSON, June 27, 1925:

The Meadville Theological School, which for two years had been carried on as an unincorporated association, was chartered by the Act of April 7, 1846, P. L. 497. This statute is silent on the subject, but an amendment specifies that "its purpose is to give instruction in religion, theology, ethics, and preparation for the Christian ministry." All the assets of the former association were delivered to the corporation, and much has since been added to them, until now it has an endowment of more than $1,000,000, and owns other property in excess of $150,000.

It is a corporation of the first class, has no stockholders, and, in accordance with the charter requirements, is managed by a self-perpetuating board of thirty

trustees. The powers of the board are expressed in the statute as follows: "They and their successors shall be competent and capable at law and in equity, to take, to and for the use of said school, any estate in any messuages, lands, tenements and hereditaments, goods, chattels, money or other effects, by gift, grant, bargain, sale, assurance, devise or bequest, of any body corporate or politic, or of any person or persons whatsoever; and the same to grant, sell, convey, assure, demise, farm, let, and place out on interest, or otherwise dispose of for the use of said school, in such manner as to them...... shall seem most beneficial to the institution; and to receive the rents, issues, profits, and interests and income of the same, and to apply the same to the proper use, benefit and support of the said school; and by the same name......to sue and be sued, plead and be impleaded, commence, prosecute and defend, in any court or courts of law or equity, and in all manner of suits and actions whatsoever, and generally, by and in the same name, to do and transact all and every business touching and concerning the premises, or which shall be incidentally necessary thereto, as fully, amply and effectually as any person or persons, body corporate or politic within this Commonwealth, have the right and power to manage their own concerns; and to hold, enjoy, and exercise all such powers, authorities, jurisdictions and privileges, as may be necessary to carry the object of the school fully into effect; but the said trustees shall not have power to encumber by debt, any of the property, real, personal or mixed, belonging to the school." None of the amendments to the charter in any way affect the powers thus given to the board of trustees.

The school is located at Meadville in this State, far distant from any well-located modern university; because of that fact,—and because of the lack of a sufficient number of candidates for the Unitarian Ministry, to educate whom the school was originally founded and

is now principally carried on,—the efforts of the trustees
to obtain the best results in administering the trust,
have, to a large degree, come to naught. In an endeavor
to minimize this result, as far as possible, for the past
nine years the trustees have been maintaining, on prop-
erty owned by the corporation in Chicago, Illinois, the
summer term of its school year, with the use of the
extensive facilities of the near-by University of Chicago.
In this way, a greater measure of usefulness has been
attained, than has been possible at Meadville, even dur-
ing the regular terms of the school. Because of the
knowledge thus acquired, and after a careful study of
the subject, the board of trustees, by a vote of twenty-
one to six (three being absent, but afterwards approv-
ing the action of the majority), resolved to "take such
steps and do such things as it may be advised are neces-
sary and advisable in order lawfully to move the insti-
tution and its educational facilities, or either of them,
to the City of Chicago, in the State of Illinois, the
school in its new environment to be maintained and
conducted along the same lines in general and for the
same objects, as near as may be, as it has been main-
tained and conducted in the past,......the income,
funds, and property of the corporation, including pro-
ceeds of sale of real estate, to be applied to the support
and use of the school in its new environment,......
that if they be so advised the board of trustees shall
cause to be formed a corporation, under the laws of the
State of Illinois, under such name as the board shall
deem advisable, and having the same objects in general
as the corporation [in Pennsylvania]......and that the
property owned by the Pennsylvania corporation be
transferred to the corporation so to be formed upon
condition that it shall be applied to the uses of the
school, and to instruction in religion, theology, ethics
and preparation for the Christian ministry, along the
lines, as near as may be, of those of the school as con-
ducted at Meadville, and that so far as practicable the

present faculty and board of trustees shall be retained." A date for the removal was fixed and a committee appointed to sell the real estate and to make preparations to carry into effect the purposes stated in these resolutions.

In the instant case, five of the trustees, who had voted in the minority, and three other persons, who had been contributors to the corporation, filed a bill in equity, averring the above facts and alleging that it was the purpose of the majority to sell all the property in Pennsylvania, to deliver the proceeds to the Illinois corporation about to be formed, and thus, illegally and contrary to their duty as trustees, to destroy the trust they were required to administer. An answer was filed,— which did not challenge the right of the plaintiffs to maintain such a bill,—a hearing was had, and a perpetual injunction granted. from which defendants prosecute this appeal.

Defendants, in admitting, by their answer, the facts set forth in the bill, inadvertently admitted also an allegation of an illegal purpose, and hence, at bar, asked leave to amend, in order to avoid the effect of this inadvertence. Later, a petition was filed, specifying their desire to deny "that it is the intent [of the board of trustees] to make such removal [to Chicago] in any way in contravention of the laws of the Commonwealth of Pennsylvania, but on the contrary [they] aver that said committee and said board intend and desire to act in consonance with the laws of said Commonwealth in making such removal of said educational activities and the conduct of said institution at Chicago, Illinois." Plaintiffs frankly admit in their brief, filed before the amendment was suggested: "We have no doubt but the majority trustees are sincere and honest in their efforts." We agree with this conclusion, and hence allow the amendment.

It will be noticed that the resolutions of the board of trustees, out of which the controversy arises, express a

desire to do one of two things, whichever may be found lawful, their preference being for the first thereof: (1) To sell all the assets of the corporation, pay the proceeds to a new corporation, to be chartered for like purposes under the laws of Illinois, and to wholly abandon the enterprise, so far as Pennsylvania is concerned; or (2) For the trustees selected in accordance with the Pennsylvania charter, to carry on in Chicago all the educational activities of the school, under the wing of and by using the equipment of the University of Chicago, in the same way that the summer school has been carried on during the past nine years.

So far as concerns the first thereof, plaintiffs say that the board of trustees cannot be permitted to destroy the trust committed to their care, but can only administer it, subject to the visitorial powers of this State and the control of its courts. Defendants admit that is the general rule in such cases, but endeavor to draw a distinction between this and an ordinary business corporation, and point to the broad charter powers granted to them by the State. The distinction suggested tells strongly against the trustees, however: Humane Fire Company's App., 88 Pa. 389; Com. v. Pauline Home, 141 Pa. 537. In the case of a business corporation, if there are no creditors, and the stockholders, who own the assets, desire to give them to a foreign corporation, they may lawfully do so; but, even then, minority stockholders can usually prevent such action. Here, however, the board of trustees, though they are a self-perpetuating body, and have no stockholders to control them, are not *owners* of the assets of the corporation, but only trustees to manage them for the public good, in accordance with, and in a manner not destructive of, the purposes specified in the charter. In this light the powers given to them must be construed. Although they may "transact all and every business......as fully, amply and effectually as any person or persons......have the right and power to manage their own concerns," it is ex-

pressly declared that all this shall be done for "the proper use, benefit and support of the said school," and that they must "hold, enjoy and exercise all such powers, authorities, jurisdictions and privileges......to carry the object of the school into effect." The board of trustees would hardly allege that, because an individual, in the management of his own concerns, could legally throw his securities into the furnace, that they may do likewise, under the grant to them as above quoted; yet this would be a logical result of their contention.

The court below, in referring to defendants' claim that the school had "the right to cease its existence [in Pennsylvania] and to transfer such existence and activities to another State," said in its opinion: "In its facts and setting the case before us is unique. The defendant school, standing for the right to remove the institution from Meadville to the State of Illinois, has been unable to find any authority clearly ruling the proposition in its favor; and we have been unable to find any such authority." We are in the same position, so far as the present question is concerned, and defendants, though having their attention thus sharply drawn to the matter, have not referred us to any such authority. They have pointed out differences between this case and those cited by plaintiffs, but they have substituted nothing valuable for the latter, nor pointed out any principle which gives the slightest color to their contention that he who is appointed to manage, may be permitted to destroy the thing to be managed or to give away its assets, because, in his judgment, destruction or a gift to others will ultimately result in better things. Although the facts are entirely different, it would be difficult to find any other authority, more clearly showing the reasons why this proposed action of the trustees cannot be permitted, than the principles set forth in the opinion of Judge KING in Langolf v. Seiberlitch, 2 Parson's Select Equity Cases 64. Without further dwelling on this phase of the case, it suffices to say it is clear to us that, without

dissolution by leave of court, the board of trustees have no power to deliver the assets of the school to a corporation of another state, however clear it may seem to them that thereby a more efficient carrying out of the charter purposes of the corporation will be brought to pass.

A very different legal situation arises when we come to consider the second question, viz: Can the trustees educate the students at Chicago, instead of at Meadville, since the purpose of the trust can thus be better accomplished? Upon this point plaintiffs and the court below do not entirely agree. Plaintiffs say, "We have had and still have no objection to the activities of the defendant school, as carried on for a portion of the year in the City of Chicago, under the direction, authority and control of the defendant school." On the other hand, the court below, in its final decree, forbids defendants, inter alia, "from carrying on the activities of the Meadville Theological School at any place outside of the jurisdiction of this court."

Presumably it was meant, by this part of the decree, to limit the activities of the school, teaching included, to the County of Crawford, though why, under the court's opinion, the City of Meadville should not have been the limit, is not clear. In our judgment the reasoning and conclusion are alike erroneous. The court says that, because the Act of 1846 specifies "the Meadville Theological School, in the borough of Meadville, in the County of Crawford be and the same is hereby incorporated," the school is limited to that place. With this, we cannot agree. The language quoted simply individuated the existing unincorporated school, in order to make clear what body was intended to be incorporated. The court further says that, because, after the Constitution of 1873, the charter was amended in accordance with the Corporation Act of 1874, this makes the corporation subject to the Constitution and the statute; and hence, as the latter requires applications for new charters to state "the place or places where its

business is to be transacted," every act of the corporation must be limited accordingly. Under the Act of 1874, each charter application, whether of the first or second class, is required to set forth the information desired by the provision quoted. If the court's interpretation of it is correct, then a construction company, chartered in Delaware County, cannot erect a building in Chester County; an oil refining company of Allegheny County, cannot market its product in Westmoreland County; a hospital of Philadelphia County, cannot have a home for convalescents in Montgomery County; and these instances might be greatly multiplied.

This argument would be fallacious, even if we agreed, as we do not, that the word "business" in the Act of 1874 has any such limiting effect. In the application for the charter of the Mann Mining Company of North Carolina, 2 Chester Co. Rep. 90, the then attorney general clearly defined the meaning of the clause referred to, as follows: "By the place where the business is transacted,......[is meant] where the corporate functions are to be performed—where the stockholders hold their elections, and the directors manage and direct the business of the corporation. It is not necessarily where the employees do their work, but the place from which the work is directed, and where the president, secretary and treasurer receive the reports of the results of the work, and pay out the dividends declared by the directors. It must be the point where the auditor general can find the proper officers to require from them reports, payment of taxes, etc. It is immaterial where they operate." So far as we are aware, this construction has always been adhered to, here (see Mount Sharon Cemetery Charter, 277 Pa. 79) and elsewhere (14 C. J. 341-2), except where specifically provided otherwise. Moreover, in the amended charter of this school, the only requirement, on this point, is that the "annual meeting of the trustees shall be held in Meadville, Pennsylvania," It might be argued from this, that all other meetings might be held

elsewhere—expressio unius est exclusio alterius,—but it is not necessary to consider the point.

It is of course true that, "as a general rule [a corporation's] strictly corporate acts must be performed within" the limits of the State of incorporation (Derry Council v. State Council, 197 Pa. 413, 416) but these are defined, in the same opinion, to be "something relating to or concerning its existence" as a corporation. "It is well settled that a corporation has the power, subject to charter or statutory restrictions and limitations, to act through its officers or other agents in any other state or country, with its express or implied permission, by engaging in business, acquiring, holding and conveying property, entering into contracts, and maintaining or defending actions, just as a natural person may": 14 C. J. 342. In the present case, the court below has expressly found "There can be no doubt that, under the laws of Illinois, a corporation organized under the laws of another state, may exercise within Illinois the general powers conferred by its own charter."

In Kimberly's Est. (No. 3), 249 Pa. 483, 490, we said that Thompson v. Swoope, 24 Pa. 474, 480, "shows what the law of Pennsylvania is now upon the subject: 'The law does not require that charities and charitable institutions, in order to be entitled to its sanction and protection, shall be limited in their sphere of operation by the lines of the State; and therefore there can be no objection to these charities on the ground that their purposes are not so limited. Nor does the State forbid its citizens from creating or fostering, by gift or bequest, charitable institutions that have their seat of operations in other states or countries, and it does not prevent a gift or devise of land to any individual person for such purposes.' The same question is ruled the same way in the Evangelical Association's App., 35 Pa. 316, where it is said that the doctrine of Methodist Church v. Remington, 1 Watts 219, has not been adhered to in this State. The great weight of authority in other states

seems to be in accord with the later Pennsylvania cases on this question. (See Grant v. Saunders, 121 Iowa 80; St. James Orphans' Asylum v. Shelby, 60 Neb. 796; Executors of Taylor v. Trustees of Bryn Mawr College, 34 N. J. Eq. 101, 104; Burbank v. Whitney, 41 Mass. 146, 153; Wicker v. Hume, 7 H. L. Cas. 123, 153, 154, 162, 166; Bowman v. Domestic & Foreign Missionary Soc., 182 N. Y. 494)."

In determining the question immediately under consideration, an appropriate sphere of action appears for the exercise, by the trustees, of the foregoing broad grant of powers given to them by the act of incorporation. By it, they have the right to apply the income of the trust "to the proper use, benefit and support of the said school......as fully, amply and effectually as any person or persons......have the right and power to manage their own concerns, and to hold, enjoy and exercise all such powers, authorities, jurisdictions and privileges as may be necessary to carry the object of the school fully into effect." Under it, there being nothing in the laws of this State or those of Illinois, to prevent the carrying "the object of the school fully into effect," by educating the students in Illinois, they have the right, in the exercise of a sound discretion, to decide so to do. That they have acted wisely in so determining has been found as a fact by the court below, for it has concluded, from ample and undisputed evidence, "that the proposed removal would result advantageously to the prosecution of the purposes for which the Meadville Theological School was established."

We are clear, therefore, that, while the final decree is right upon the first question involved, it errs in respect to the second, and hence it should be, and hereby is modified, to read as follows: "And now, June 27th, 1925, it is ordered, adjudged and decreed that the corporate defendant, the Meadville Theological School, and the individual defendants, Franklin S. Southworth, Charles H. Strong, H. H. Lathrop, C. W. Reese, E. D. Warner,

H. W. Forster and Morton D. Hill, committee of the board of trustees of said corporation, their and each of their officers, agents, employees and trustees, and the successors of each of them, are hereby perpetually enjoined and restrained from transferring or delivering any of the assets of said school to any other person, persons, partnership, association, institution, or corporation, to enable the latter to carry on any of the purposes of said incorporation; from managing and directing its strictly corporate business in any other place than the City of Meadville in the State of Pennsylvania; and from doing or attempting to do any other act, matter or thing, which may or will prevent the present or any future board of trustees of said school from personally transacting the business of the corporation in the way and manner, and at the place specified in the charter and the several amendments thereto." As thus modified, the decree of the court below is affirmed and the appeal is dismissed, at the costs of the Meadville Theological School.