## Oyster *versus* Oyster.

Testator devised as follows: "I give and bequeath to my son, S., my farm situated . . . . . for his support and estate to be and remain bequeathed to his children during their natural life." *Held* (the context not indicating a contrary intent), that the word "children" was used as a word of purchase, and therefore, testator's son S. took but a life estate in the farm.

May 10th 1882, before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN JJ.

ERROR to the Court of Common Pleas of *Cumberland county :* Of July Term 1882, No. 58.

Case stated, wherein Simon W. Oyster was plaintiff and Napoleon K. Oyster defendant, setting forth as follows :

Simon Oyster, late of Harrisburg, Dauphin county, Penn-

[Oyster *v*. Oyster.]

sylvania, died, seised in fee of a large amount of real estate, leaving a widow, Margaretta Oyster, and a number of children. By his will, dated June 14th 1865, and duly proven April 6th 1867, he devised, inter alia, as follows, to wit:

"I give and bequeath to my son, Simon Washington Oyster, my farm, situated in East Pennsboro', county of Cumberland, State of Pennsylvania, Mansion farm, containing one hundred and twenty-five acres, with all improvements, and twenty acres woodland, east side Blue Mountain, running to its base in said township, &c., in woodland for farm, with three-story brick house on South street, in Harrisburg, No. 4 in my row, and ten shares of Harrisburg bridge stock, and twenty shares of Harrisburg bank stock, for his support and estate to be and remain bequeathed to his children during their natural life."

At the time of the death of Simon Oyster, Simon W. Oyster was a minor and without children. He has since married and has children living.

On March 15th 1882, Simon W. Oyster made a contract to convey the farm in East Pennsboro' township, mentioned in the foregoing devise, "by deed in fee simple and clear of all incumbrances," to Napoleon K. Oyster, the defendant—the deed therefor to be "delivered on April 1st 1882, or as soon thereafter as possible." In consideration of this, N. K. Oyster bound himself to pay to Simon W. Oyster ten thousand dollars, as follows: five hundred dollars on the agreement, the balance of one half on delivery of deed and possession, and the remainder in two equal annual payments on April 1st 1883 and 1884, with interest on each payment from April 1st 1882, payable annually, and to be secured by judgments. On April 3d 1882, Simon W. Oyster formally tendered a deed in fee simple for said farm to the defendant. The parties to the deed were Simon W. Oyster, the plaintiff, with Bella M., his wife and Margaretta Oyster, widow of Simon Oyster, deceased, who had declared to take under her husband's will and joined in the deed in order to convey the property clear of her dower. The defendant declined to accept the deed thus tendered, and refused to pay the sum of forty-five hundred dollars then payable under the agreement, and to give the judgments provided for, alleging that under the will of Simon Oyster, deceased, the fee simple in land did not pass to Simon W. Oyster, the plantiff. The agreement and the deed are made parts of this case. Should the Court be of the opinion that Simon W. Oyster took an estate in fee simple in the farm in East Pennsboro' township under the will of Simon Oyster, deceased, then judgment is to be entered for the sum of forty-five hundred dollars, with interest from April 1st 1882, in favor of the plaintiff against the defendant; but if the Court should be of a contrary opinion, the judgment is not

be entered in favor the defendant against the plaintiff for the sum of five hundred dollars, the amount paid by the defendant on the agreement, with interest from March 15th 1882. The costs shall follow the judgment and either party shall have the right to take out a writ of error to the Supreme Court without oath or bail.

The court entered judgment for the plaintiff on the case stated; whereupon the defendant took this writ of error, assigning for error the entry of said judgment.

*S. Hepburn, Jr.,* for the plaintiff in error.

*John Hays,* for the defendant in error.

Mr Justice PAXSON delivered the opinion of the Court October 2d 1882.

The single question in this case is whether the word "children" in the third clause of Simon Oyster's wi.. is a word of limitation or of purchase. The learned judge below held that under the said clause the testator's son, Simon Washington Oyster, took an estate tail, which under our statute of 27th April 1855 is enlarged into a fee simple. The operative words of the clause are as follows: "I give and bequeath to my son, Simon Washington Oyster, my farm, in East Pennsboro', county of Cumberland, . . . for his support and estate, to be and remain bequeathed to his children during their natural life."

Without reviewing the learning upon this subject, it is sufficient to say that the authorities are uniform that "children" is as certainly a word of purchase as "heirs of the body" are words of limitation: Guthrie's Appeal, 1 Wright 9; Taylor *v.* Taylor, 13 P. F. S. 481. This is the general rule, and the exceptions which from time to time have been recognized do not impair the rule itself. There are many instances in our state where "children" has been held to be a word of limitation, but in all of them such construction was clearly in accord with the intent of the testators as gathered from the four corners of the will, as when "children" has been used with "heirs of the body" or "issue" as its synonyms.

The ruling of the court below was based mainly upon the supposed intent of the testator; the learned judge being of opinion that he employed the word "children," not in its usual sense as a word of purchase, but in the more comprehensive sense of a word of limitation, pointing out the course of descent through the entire line of lineal heirs; and that, as there was no limitation over, the presumption is that he intended to dispose of his whole estate.

This course of reasoning is not without force, but we think

[Oyster *v.* Oyster.]

it insufficient to overturn the legal and technical meaning of the testator's language. The intent of a testator is always important in the construction of a will, where such intent can be gathered from the face of the will with reasonable certainty. But too much care cannot be exercised to avoid setting aside the expressed intention for a supposed intention. In the former instance we have a rule which may be followed with mathematical precision, which lawyers and conveyancers understand, and in regard to which they can safely advise their clients; while in the latter case we are involved in speculation and uncertainty, and the result at last is but a guess, and not always a correct one. Mr. Jarman says in his work on Wills, vol. 3, p. 708: "Words and limitations may be transposed, supplied or rejected, where warranted by the immediate context or the general scheme of the will; but not merely on a conjectural hypothesis of the testator's intention, however reasonable, in opposition to the plain and obvious sense of the language of the instrument." This principle is recognized by Mr. Hawkins and other text-writers, and runs throughout our entire line of cases.

The will before us was probably drawn by the testator himself. We have examined it in vain for anything that clearly indicates that he used the word "children" in the third clause as a word of limitation. If such intent does not clearly appear, it does not appear at all for the purposes of this case, as the legal and well-understood meaning of the word "children" cannot be overturned upon mere conjecture. The third clause of of the will, standing alone, evinces an intent to give his son Simon the farm, for his support during his life. It is then given to his (Simon's) children, during their natural life. The gift to the children means something. It was intended to take effect in the future; the children were to take as purchasers, as a gift from the testator, and by virtue of his own power to dispose of the land. Just what estate the children take under the will, is a question that does not arise in this case. There is no remainder over on failure of children, and, while this is a circumstance entitled to some weight, it is not controlling: Hoffner *v.* Wynkoop, 1 Outerbridge 130. If, upon such failure, the testator intended the farm to revert to his estate, the law would carry it there as effectually as would a special direction in his will. He may have relied upon the law for this purpose, or the possibility of Simon's dying without children may never have occurred to him.

There is nothing in the remainder of the will in conflict with this view. It is true, in a single instance he uses the word "children" as the equivalent of "heirs," referring to his own children, and his own heirs, in the first and second paragraphs of the will. But nowhere, in speaking of the children of his

[Eberly *v.* Lehman.]

sons and daughters, does he use the word indiscriminately with heirs of the body or issue, and all of them as meaning an entire line of lineal descent. Haldeman *v.* Haldeman, 4 Wright 29, relied upon by the defendant in error, was ruled mainly upon the ground that the words referred to were so used.

While the testator may have intended the word "children" as a word of limitation, such fact does not clearly appear, and it would not be safe for us to assume it.

We are of opinion that the word "children" in the third clause of Simon Oyster's will, is a word of purchase. It follows that Simon Washington Oyster took but a life estate in the farm, which is the subject of this contention.

The judgment is reversed, and it is ordered that judgment be entered in favor of Napoleon K. Oyster, the defendant below, upon the case stated.