Statement of Facts.

# N. K. OYSTER v. H. C. KNULL.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS
OF DAUPHIN COUNTY.

Argued June 2, 1890—Decided October 6, 1890.

(a) A testator provided as follows: "I give and bequeath to my son N.
K. O. my Mount Airy farm . . . . . for his support, and if he should
be spared to have family, I desire the above estate to go to use of his child-
ren." When the testator died, the devisee was but ten years old, and re-
mained unmarried and without issue:

1. The word " children " in said will, was a word of purchase, not of limita-
tion; and, therefore, the devisee took but a life-estate. That such was
the intention was indicated by the words " for his support: " Oyster v.
Oyster, 100 Pa. 538; and the word " desire " as employed in the will,
was not precatory, merely, but mandatory: Fox's App., 99 Pa. 382.

2. The word " children " in a will, is primarily and generally a word of
purchase; and, while it may be used to signify heirs, or heirs of the body,
it will not be so construed, unless the testator has employed other words
indicative of an intention to use it as a word of limitation.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WIL-
LIAMS, McCOLLUM and MITCHELL, JJ.

No. 8 May Term 1890, Sup. Ct.; court below, No. 327 Jan-
uary Term 1890, C. P.

On November 11, 1889, a case stated was filed wherein Napo-
leon K. Oyster was plaintiff and Henry C. Knull, defendant,
showing as follows:

"That Simon Oyster, late of Harrisburg, Dauphin county,
Pennsylvania, died on or about April 1, 1867, seised in fee of
a large amount of real estate situate in Dauphin and Cumber-
land counties, Pennsylvania, leaving a widow, Margaretta Oys-
ter, and five children. By his will, dated June 14, 1865, and
duly proven April 6, 1867, he devised, inter alia, as follows, to
wit:

"'4. I give and bequeath to my second son, Napoleon Kiever
Oyster, my Mount Airy farm, containing one hundred and
twenty-five acres of land with all the improvements thereon in
Susquehanna township, adjoining the city of Harrisburg, with

a three-story brick house, No. 3 in South street, and lot thereon, for his support, and if he should be spared to have family, I desire the above estate to go to use of his children, and ten shares of Harrisburg Bridge stock and twenty shares of my Harrisburg Bank for his use.'

" And after devising another farm in Cumberland county, to his son, Simon W. Oyster, and one in the same county to his daughter, Ellen M. Oyster, and eighty-four acres of land with grist and saw-mills, in the same county, to his son Albert L. Oyster, he provided as follows :

" 'I would request my executors nor either of my heirs not to dispose of my farms as before stated farms to Simon and Napoleon, my property in Pine street, Harrisburg, and as such I desire that this as my last Will and Testament may be recorded. Request that these witnesses may prove same and would wish no change made by either heirs or law to same.'

" At the time of the death of Simon Oyster, Napoleon K. Oyster was a minor and unmarried. He is now thirty-two years old, but remains unmarried, and without children. The ten acres of land herein mentioned have been become part of the city of Harrisburg, and lie in the path of public improvements.

" On September 1, 1889, Napoleon K. Oyster made a contract to convey ten acres of the Mount Airy farm, mentioned in the foregoing devise to him, by deed in fee-simple and clear of all encumbrances, to Harry C. Knull, the defendant, the deed to be delivered October 1, 1889. In consideration whereof the said Harry C. Knull agreed and bound himself to pay the said Napoleon K. Oyster the sum of $5,000 on October 1, 1889, when deed was to. be delivered.

" On October 1, 1889, Napoleon K. Oyster tendered a deed in fee-simple for said ten acres of land to the defendant, Harry C. Knull. The deed was executed by said Napoleon K. Oyster and Margaretta Oyster, widow of Simon Oyster, deceased, she, having June 5, 1867, filed her election not to take under her husband's will, but under the intestate laws of the commonwealth, and she therefore joined in the deed in order to convey the said ten acres of land clear of her dower. The land had no other encumbrance upon it.

" The defendant declined to accept the deed thus tendered,

Opinion of Court below.

and refused to pay the said sum of $5,000 then payable under the agreement, alleging that under the will of Simon Oyster, deceased, the fee-simple in said ten acres of land did not pass to Napoleon K. Oyster, the plaintiff. The agreement and deed are made parts of this case.

" Should the court be of opinion that Napoleon K. Oyster took an estate in fee-simple in the Mount Airy farm, of which the ten acres herein mentioned, are part, under the will of Simon Oyster, deceased, then judgment to be entered for the sum of $5,000, with interest from October 1, 1889, in favor of the plaintiff and against the defendant; but if the court should be of a contrary opinion, then judgment to be entered in favor of the defendant."

After argument of the case stated, SIMONTON, P. J., filed the following opinion :

This is one of a class of cases that occur from time to time, the law of which can be settled only when it has been decided by the court of last resort. As was said by SHARSWOOD, C. J., in Fox's App., 99 Pa. 386, " every will is to be construed from its four corners, to arrive at the true intention of the testator. Decisions from other wills may assist, but cannot control the construction."

The terms in which the testator has expressed his intention, in the will before us, are fairly susceptible of either of two different legal constructions. They can be held to give the plaintiff, the first taker, a life-estate, with remainder over to his children, if any; or to give him the fee, coupled with a desire that he leave the estate at his death to his children, if he should leave any surviving him. We think it probable that neither of these constructions would express the actual intention which was in the mind of the testator. We believe that if he had been questioned so as to bring out the exact thought it would have been this : That he intended the estate to go to the plaintiff, and, if he had children living when he died, then the estate to go to them; but if he had no children then he could dispose of it as he saw fit. This, we think, is what the testator would have said was his intention. Translated into legal terminology, it would be that the plaintiff was to take a life-estate if he had children surviving at his death; if not, he was to take a fee.

Arguments.

But such a dual, disjunctive, contingent, intention cannot be recognized by the law. The will must be read as of the date of the testator's death, and we must determine whether the plaintiff did or did not take the fee, without waiting for the contingency of his having children to be determined. We must interpret the will so as to effect the general intent of the testator: Jauretche v. Proctor, 48 Pa. 472.

We have no difficulty in determining that the testator used the word children in its ordinary sense as a word of purchase, and not in the sense of heirs generally. True, he uses "heirs" and "children" interchangeably, but by both he means "children." Nor can any binding effect be given to the request to his heirs not to dispose of his farms. If the fee was devised, they could dispose of them or not as they chose.

But we do not think anything is to be gained by a further discussion of the case. In view of the evident fact that the object of this proceeding is to settle the title to the land in question, and that this can be done by the court of last resort, only, we content ourselves with deciding according to our best judgment, that the general intent of the testator was that the fee should vest in the plaintiff, and that any particular intent he may have had, inconsistent with this, must give way; and we, therefore, direct judgment to be entered in favor of plaintiff and against defendant for the sum of $5,000, with interest from October 1, 1889, on the case stated.

—Thereupon the defendant took this appeal, assigning the order directing judgment to be entered for the plaintiff, for error.

*Mr. H. M. Graydon*, for the appellant.

Counsel cited: Cote v. VonBonnhorst, 41 Pa. 243; Keim's App., 125 Pa. 480; Fox's App., 99 Pa. 382; Oyster v. Oyster, 100 Pa. 538.

*Mr. B. F. Etter*, for the appellee.

Counsel cited: Haldeman v. Haldeman, 40 Pa. 35; Guthrie's App., 37 Pa. 9; Williams v. Leech, 28 Pa. 94; Taylor v. Taylor, 63 Pa. 488; Homet v. Bacon, 126 Pa. 181; Karker's App., 60 Pa. 141; Beck's App., 46 Pa. 527; Smith's App., 23 Pa. 9; Passmore's App., 23 Pa. 381; Rewalt v. Ulrich, 23

Pa. 388; Braden v. Cannon, 1 Gr. 60; Fulton v. Fulton, 2 Gr. 28; Burt v. Herron, 66 Pa. 402; Pennock's Est., 20 Pa. 268; Jauretche v. Proctor, 48 Pa. 470; Dodson v. Ball, 60 Pa. 500.

OPINION, MR. JUSTICE STERRETT:

The only question presented in this case stated is whether the plaintiff, under his father's will, took a freehold of inheri· tance or only a life-estate in the Mount Airy farm.

It appears that in June, 1865, the testator, Simon Oyster, ·made his will, and in less than two years thereafter died seised ·of certain real estate, leaving to survive him a widow, Marga-retta Oyster, and five children, one of whom, the plaintiff, then about ten years old, has ever since remained unmarried and without children. The operative clause of his will is as follows:

" 4. I give and bequeath to my son Napoleon Kiever Oyster my Mount Airy farm, containing one hundred and twenty-five acres of land with all the improvements thereon in Susque-hanna township, adjoining the city of Harrisburg, with a three-story brick house, No. 3 in South street and lot thereon, for his support, and if he should be spared to have family, I desire the ·above estate to go to use of his children and ten shares of Har-·risburg Bridge stock and twenty shares of my Harrisburg Bank for his use."

The learned president of the Common Pleas came to the conclusion that the testator's general intention was to give the plaintiff an estate in fee, and he accordingly entered judgment on the case stated in his favor. In so doing we think there was error. It cannot be seriously doubted that the word " children," in the clause above quoted, was used by the tes-·tator as a word of purchase, and not of limitation. That word in a will is primarily and generally a word of purchase; and, while it may be used to signify " heirs," or " heirs of the body," it will not be so construed, unless the testator has employed other words indicative of an intention to use it as a word of ·limitation. There appears to be nothing in the will to indicate any such intention. The testator, it is true, used the words ·" heirs " and " children " interchangeably, but in doing so he ·· evidently in each case meant " children." Nor can anything

be predicated of the facts that plaintiff was only ten years of age when his father died, and has since remained unmarried and childless: Cote v. VonBonnhorst, 41 Pa. 243.

The testator gave his Mount Airy farm, etc., to plaintiff "for his support," thereby indicating that a life-estate was intended; and then declares, " if he should be spared to have family, I desire the above estate to go to use of his children." The word " desire," thus employed by the testator, is not merely precatory. It is as mandatory as if the words " I will," or " I order and direct," had been used: Fox's App., 99 Pa. 382. Under another clause in the same will the question heretofore arose whether the devisee therein took an estate in fee or for life only. In an opinion by the present Chief Justice, this court held that the devise to the first taker was for life only: Oyster v. Oyster, 100 Pa. 538. The phraseology of that clause differs from that of the one now under consideration, but while that is so, and the language of the former is stronger than that of the latter, the difference appears to be in phraseology rather than in meaning.

As already stated, the words " I desire," etc., as employed by the testator, are equivalent to the words "I will and direct." The clause in question may then be read thus, " I will that the above estate shall go to the use of his children." Coupling that with the preceding words of same clause, " for his support," the interest of plaintiff as first taker would appear to be limited to a life-estate. While it cannot be said that the construction we have adopted is entirely free from doubt, we are of opinion that judgment on the case stated should be entered in favor of defendant.

> Judgment reversed, and judgment on the case stated is now entered in favor of the defendant.