## Kimberly's Estate (No. 3).

*Wills—Gift to charitable purposes—Discretion of trustees—Objects of charity—Construction.*

1. The Statute of 43 Elizabeth Ch. 4, defining certain charitable purposes for which legacies may be bequeathed is not in force as a statute in Pennsylvania; but its principles are a part of our common law and aid in determining what a charity is. While each purpose stated in the Statute of 43 Elizabeth is a charity in Pennsylvania, there are many other similar purposes which are also charities here.

2. The law does not require that charitable institutions shall be

limited in their sphere of operation by the lines of the State, nor does the State forbid its citizens from creating or fostering by gift, or bequest, charitable institutions that have their seat of operation in other states or countries, or prevent a gift or devise to any individual for such purposes.

3. Where a testator bequeathed a portion of his residuary estate to trustees with directions that the trustees should use and apply the same "to such charitable uses, objects and purposes as they may from time to time select or deem most desirable; hereby giving to them the full and absolute power to select and apply the whole of said rest, residue and remainder to charitable uses, objects and purposes as fully and completely as I myself could do if living," the trustees did not exceed their power in dispensing a portion of the funds to needy and helpless individuals, or in making gifts thereof to such individuals not residents of the State, or to charitable corporations chartered by other states and which performed none of their corporate functions within the State of Pennsylvania.

4. In such case the trustees did not exceed their powers in making a contribution to an organization originally founded by a charitable gift, which kept and maintained a club house containing a valuable library and offered facilities for recreation and amusement as well as for educational improvement to its members or the general public. The fact that a nominal membership fee was charged was not material, as it appeared that all persons who were respectable were received as members, that the so called club had no capital stock and made no financial profit, but was operated at a loss and was obliged to resort annually to charity to make up the deficit.

Argued March 3, 1915. Appeal, No. 43, Oct. T., 1915, by John C. Bell, Attorney General for the Commonwealth of Pennsylvania, from decree of O. C. Mercer Co., Jan. T., 1913, No. 19, dismissing exceptions to report of auditor in estate of Peter L. Kimberly, deceased. Before MESTREZAT, POTTER, ELKIN, MOSCHZISKER and FRAZER, JJ. Affirmed.

Exceptions to report of Q. A. Gordon, Esq., Auditor. Before WILLIAMS, P. J.

The opinion of the Supreme Court states the facts.

The court dismissed the exceptions. John C. Bell, At-

1915.] Assignment of Error—Opinion of the Court.
torney General for the Commonwealth of Pennsylvania, appealed.

*Error assigned* was in dismissing the exceptions.

*W. D. Wallace,* for appellant.

*James P. Whitla,* with him *Rubens, Fischer & Mosser,* for appellees.

OPINION BY MR. JUSTICE MOSCHZISKER, May 17, 1915:

By the will of Peter L. Kimberly, deceased, all his estate was given to John C. Owsley, of Sharon, Pennsylvania, Ira B. Bassett, of Cleveland, Ohio, and George A. Baird, of Chicago, Illinois, as "executors and trustees," in trust, with defined powers to enable them conveniently and without sacrifice to marshal the assets and make distribution in kind where such course should seem advisable. A period of five years from death of testator was allowed for settlement, with permission to make earlier distribution, according to their discretion. While the entire estate was formally given in trust, as to seventy-seven per centum thereof no special trust, beyond that of administration, was declared; that portion was disposed of by legacies to various individuals, the amount for each person being designated as a certain percentage of the whole estate. The remaining twenty-three per centum was given in the third "paragraph" or item of the will, upon the following express active trust: "After providing for the payment of the legacies and bequests......above mentioned, the aforesaid trustees and executors, for charitable purposes, shall use and apply the rest, residue and remainder.......to such charitable uses, objects and purposes, as they may from time to time select or deem most desirable; hereby giving to them the full and absolute power to select and apply the whole of said rest, residue and remainder......to charitable

uses, objects and purposes, as fully and completely as I myself could do if living."

The administration of the estate having been completed, and the final account of the executors filed and confirmed, the three trustees named received the Charity Fund, and thereafter filed an account, showing the receipt of $460,857.71, besides 27,140 shares of various corporate stocks, as to which we find no proof of value. The disbursements were, among others, donations to individuals and institutions, amounting to $13,777.50 made by the accountants in the exercise of the power and discretion vested in them to dispense the fund in question for charitable uses, objects and purposes. The credits taken for these charitable donations were excepted to by the attorney general of Pennsylvania, on the grounds, (1) "that the language of the will creating the trust confers no power or authority upon the trustees to dispense any part of the trust fund to individuals, particularly to individuals who are not residents of Pennsylvania, and further that the payments made as charitable donations to the individuals named in the account are not such as are authorized by the will," (2) "that none of the corporations, institutions or organizations to which donations have been made by the trustees have been organized or are being operated or carried on for such charitable uses, objects and purposes as are contemplated by the third paragraph of testator's will, and (3) "that corporations chartered by other states, and which perform none of their corporate functions within the State of Pennsylvania, are not within the class of charitable institutions to which donations may be made by the trustees, and therefore none of the donations made to such foreign corporations are proper credits." The exceptions to the account were referred to an auditor, who dismissed them all, filing an elaborate report which was subsequently approved by the court below; the attorney general has appealed.

The auditor carefully reviews the details relating to

each of the fifteen charitable donations objected to on this appeal; but to do so here would unduly extend the present opinion. In general he states: "The exceptions filed......do not attack the validity of the trust, nor deny the present right of the trustees to dispense the funds in their hands for charitable uses, objects and purposes, but allege that the recipients of the donations ......are not of the class contemplated by the testator in establishing the trust." The auditor then examines each donation separately, after which he proceeds to say: "In considering whether these several persons and organizations are within the purview of the trust for charity established by the will, it is well carefully to scrutinize the language used by the testator and determine therefrom what he intended. In doing this it will be observed in the first place that the testator does not in any way designate any particular kind of charity, but uses the most general and comprehensive terms possible, his words being, 'charitable uses, objects and purposes.' The class of charities which the testator has indicated is therefore the most comprehensive conceivable and includes every object and purpose which by the most liberal construction can be brought within the legal meaning of the term charity. It will also be observed that the power and discretion vested in the trustees to select the beneficiaries under this trust, while limited to the class mentioned, are the broadest that can be imagined......The only restriction or limitation upon the power of the trustees in dispensing the fund is therefore that the purpose for which any donation is made must be in some legal sense a charity. There is no restriction as to the time, nor territory, nor to natural or artificial persons; as to all such matters as these the trustees have the same power that Peter L. Kimberly would have if he were living......Whether any particular purpose is a charity in Pennsylvania does not depend upon the wording of any act of assembly. The Statute of 43 Elizabeth, Ch. 4, which by its preamble enumerates certain

charitable purposes, is the usual test in the English courts, but this act is not in force as a statute in Pennsylvania; its principles, however, are a part of our common law, and aid in determining what is a charity in our courts: Cresson's App., 30 Pa. 437, 450. While each purpose stated in the Act of 43 Elizabeth, Ch. 4, is a charity in Pennsylvania, there are many other similar purposes which are also charities here, the rule being ......never to circumscribe the operation of the statute: Wright v. Linn, 9 Pa. 433, 435. Among the purposes named in this English Statute are: the relief of aged, impotent and poor people; schools of learning; the education and preferment of orphans; the aid and help of young tradesmen, handicraftsmen, and persons decayed; these purposes in direct terms cover perhaps all of the donations made to individuals by the trustees in this case, and most of those made to organized associations." After this the auditor abstracts definitions and discussions of the term "charity" from the following cases: Price v. Maxwell, 28 Pa. 23; Fire Insurance Patrol v. Boyd, 120 Pa. 624; Donohugh's App., 86 Pa. 306, 312; Centennial and Memorial Association of Valley Forge, 235 Pa. 206; he then continues thus: "Comparing with these principles the several donations made by the trustees in this case, it is not difficult to conclude that all of these donations were made for charitable uses, objects and purposes. The five individuals to whom financial aid was extended by the trustees were all proper objects of charity, and their destitution and helplessness were such as would appeal to any humane person. There is no merit in the exception that the trustees have no power under the will to dispense any part of the charity fund to individuals. There is nothing whatever in the will excluding individuals or limiting the trustees' power of selection to associations incorporated or unincorporated. The fund is to be distributed for charitable uses, objects and purposes according to the discretion of the trustees. By the nature of things, individuals are in any event to

be the ultimate beneficiaries, and whether they receive their benefits directly from the hands of the trustees, or through the medium of some charitable association selected by the trustees, is wholly immaterial......It is unnecessary to take up the several organizations to which donations were made by the trustees......to show that each comes within the meaning of the Pennsylvania cases defining what is a charity; ......most of these, such as hospitals, homes, schools and nurseries, are genuine unmixed charities, measured by any known legal test. All of the others are also charities in a very proper legal sense, under the authorities cited, being institutions established and carried on by gifts from benevolent persons, not for the financial gain or profit of any person, but for the physical, mental or moral betterment of an indefinite number of persons. Some of these may not come under the definition of a 'purely public charity' so as to be exempt from taxation in this State, but exemption from taxation is not the question in this case. Not all legal charities are exempt from the payment of taxes, but all are within the meaning of the words 'charitable uses, objects and purposes,' as used in Peter L. Kimberly's will."

We quote liberally from the report of the learned auditor, for, after reading the cases and making a most thorough examination of the record, we concur with the court below, that, in the main, he properly disposes of the attorney general's exceptions, in "a clear, concise and convincing manner," that could not well be improved upon. Practically, the only point pressed in appellant's printed argument concerns the donations to nonresident charities; as to this, the auditor correctly states: "The exception based upon the claim that the trustees have no power to appropriate any part of the charity fund to individuals who are nonresidents of Pennsylvania, or to corporations or associations incorporated or organized in other states, and operating exclusively outside of Pennsylvania, cannot be sustained.

There is no such limitation as this in the will and the power of selection given to the trustees is the same as the testator could exercise if living. It will hardly be contended that the testator himself could not bestow his bounty upon nonresident charities. But the rulings of the courts are against this claim, even in cases where trustees have by the terms of the trust less latitude in the matter of the selection of the beneficiaries, than in this case. It is true that in an old case, Methodist Church v. Remington, 1 Watts 219, the opinion was expressed that a corporation of another state could not take lands in Pennsylvania, by gift or devise for charitable uses. This opinion, was, however, reviewed and disapproved in Thompson v. Swoope, 24 Pa. 474, where exactly the contrary was decided. The following extract from the opinion of the Supreme Court in this latter case shows what the law of Pennsylvania is now upon the subject: 'The law does not require that charities and charitable institutions, in order to be entitled to its sanction and protection, shall be limited in their sphere of operation by the lines of the State; and therefore there can be no objection to these charities on the ground that their purposes are not so limited. Nor does the State forbid its citizens from creating or fostering, by gift or bequest, charitable institutions that have their seat of operations in other states or countries, and it does not prevent a gift or devise of land to any individual person for such purposes.' The same question is ruled the same way in The Evangelical Association's App., 35 Pa. 316, where it is said that the doctrine of Methodist Church v. Remington, 1 Watts. 219, has not been adhered to in this State. The great weight of authority in other states seems to be in accord with the later Pennsylvania cases on this question." (See Grant v. Saunders, 121 Iowa 80; St. James Orphans' Asylum v. Shelby, 60 Neb. 796; Executors of Taylor v. Trustees of Bryn Mawr College, 34 N. J. Eq. 101, 104; Burbank v. Whitney, 41 Mass. 146, 153; Wick-

er v. Hume, 7 H. L. Cas. 123, 153, 154, 162, 166; Bowman v. Domestic & Foreign Missionary Soc., 182 N. Y. 494).

The only donation which has caused us particular concern is that to the F. H. Buhl Club; but the facts found by the auditor, which are not attacked, show that, while this organization is called a club, its purpose is not merely social. He says: "Its operations are the result of a magnificent charitable gift, of perhaps a quarter of a million dollars, made by Frank H. Buhl, for the benefit of the people of Sharon, in the form of a well equipped club house. In this building there is kept and maintained a valuable library of over 10,000 volumes, and facilities not only for recreation and amusement, but for various kinds of educational improvement. The membership fee is merely nominal, and all persons who are respectable are received as members. If the institution operated nothing but its library, it would be a legal charity (Donohugh's App., 86 Pa. 306). It is not supported by its members; for every dollar paid by a member, from two dollars to two dollars and a half are given back to him in educational and other advantages, which cost the club that amount in cash. The unavoidable deficit is made up by charitable gifts each year. The institution has no capital stock, and financial profit is foreign to its purpose and impossible in its management. The benefits it gives in the way of recreation and educational improvement are of a kind most needed by the laboring classes, clerks and salesmen, who constitute the majority of its membership." It further appears that one of the charter purposes of this institution is the "encouragement of education," and that it has entertainments and facilities which are open to the general public; in fact, this so-called club, in many respects, appears to be much like the various branches of the Young Men's Christian Association existing throughout our country. On the whole, we are not prepared to say that, considering the broad discretion vested in the trustees under the testator's will, the $100 given to the institution in question

was not for a "charitable use": Dulles's Est., 218 Pa. 162.

In disposing of the other appeals in this case, we put the costs on the residuary estate of the testator in each instance, for, while, there as here, we found no reversible error, yet, we were impressed that it was important to the successful administration of the charitable trust created by the will of Peter L. Kimberly that the various questions raised by all these appeals should be finally determined, and that, probably, the several records had been brought before us largely with that end in view; we shall follow the same course in this instance.

The assignments of error are all overruled and the decree is affirmed; the costs to be paid out of the estate in the hands of the trustees.