## Kalbach's Estate.

*Wills—Cy pres doctrine—Tombstones—Trusts and trustees.*

1. *Cy pres* is a rule of judicial construction designed to aid the court to ascertain and carry out, as nearly as may be, the intention of the donor. Though followed, it has never been bodily taken into the law of Pennsylvania. As adopted by the law of Pennsylvania, it is a reasonable doctrine by which a well-defined charity, or one where the means of definition are given, may be enforced in favor of the general intent, even where the mode or means provided for by the donor fail by reason of their inadequacy or unlawfulness.

2. In Pennsylvania, the doctrine of *cy pres* is not confined to the administration of charities, but is equally applicable to devises and contracts wherein the future is provided for, and it is an essential element of equity jurisprudence.

3. A trust for the purchase and erection of tombstones is not a charity, nor is it a devise or contract providing for the future, and cannot, therefore, be interpreted and executed under the *cy pres* doctrine.

4. Where a testator creates a trust for the purchase and erection of tombstones by clear and express language which is impossible of performance, such trust is inoperative and the trustees will be relieved of its execution.

5. Tombstones, like heirlooms, pass to the heirs of decedent. They are not devisable; nor do they pass as personal property.

Petition for declaratory decree construing will. O. C. Berks Co., File No. 1099.

*Wellington M. Bertolet*, for petitioner.

*W. A. Witman, Jr.*, for next of kin and residuary legatee.

MARX, P. J., April 16, 1927.—The Berks County Trust Company and Wellington M. Bertolet, trustees under the will of Caroline Kalbach, deceased, seek a declaratory decree defining their authority under Section *(b)*, Item "Third," of decedent's said will.

From the testimony submitted, we find facts essential to the disposition of the petition as follows:

1. Caroline Kalbach, late of Reading, died on Aug. 23, 1916, leaving a last will and testament, in writing, dated June 8, 1916, probated June 5, 1917, before the Register of Wills of Berks County, Pennsylvania, and under which letters testamentary were issued to The Berks County Trust Company and Wellington M. Bertolet, executors named therein.

2. In due course, said executors filed their account in the Orphans' Court of Berks County, and under an adjudication thereon there came into the

hands of these petitioners the sum of $5680.15, to be held and applied under the terms of the trust established under decedent's last will and testament.

3. Sigmund Reider, life beneficiary under said trust, died on Oct. 25, 1926; said trustees thereupon, on Jan. 29, 1927, filed their account in this court, showing a balance of $5031.90, personal estate, principal account, and $57.85, personal estate, income accrued since Oct. 25, 1926, in their hands.

4. The terms of the trust rest upon the following portions of the last will and testament of Caroline Kalbach, deceased, to wit:

"Third. I give, devise and bequeath all the rest, residue and remainder of my estate of every kind to the Berks County Trust Company of Reading, Pa., and Wellington M. Bertolet in trust to pay the net income thereof in quarterly instalments to Sigmund Reider during his natural life and upon his death to dispose of the principal in the following manner:

"(a) To pay to the Charles Evans Cemetery Company clear of any collateral inheritance tax which may become due thereon the sum of Six Hundred Dollars in trust to keep in good order and repair forever the burial lot of my deceased husband, Abraham O. Ehrgood, being lots Nos. 51 and 52, Section D 1 sub. in said Cemetery, the burial lot of my father, Isaac Kalbach, being lot No. 30, Section D, in said Cemetery, and the burial lot of Henry Mertz (Matz) and William Meyers, being lot No. 32, Section L, in said Cemetery, in good order and repair forever and forever.

"(b) I direct my executors hereinafter named to purchase from the Epp Granite Company, of Reading, Pennsylvania, ten tombstone slabs of the very best flawless Richmond Granite; each slab to be seven feet long, forty-two inches wide and sixteen inches high; each slab to be bordered by an ivy vine, berries and creepers, all to look full and natural; three big heavy oak leaves to be carved on each corner of each slab; a wreath of natural looking roses with stems full of thorns, rosebuds and rose leaves, natural looking daisies, forget-me-nots, bleeding hearts and broad ribbon bow, similar in size and design to that carved on the tombstone of George William Washington Kalbach Gehry, to be carved on each of said slabs, excepting the slabs to be placed on the grave of my two children, Charlotta and Mabel Matz, which is to have two similar wreaths of smaller design and two inscriptions, and excepting the slab to be placed on the grave of my three children, Abraham, Isaac and Susannah Ehrgood, which is to have three similar wreaths of smaller design and three inscriptions; all work on the top of said slabs, such as lettering, wreaths, ivy vine, leaves, berries, creepers and oak leaves, to be raised; each of said slabs to cost, including foundation and erection, the sum of Three Hundred and Fifty Dollars ($350), not more and not less. I direct my said executors to have said slabs suitable and appropriately inscribed and placed in Charles Evans Cemetery as follows:

"One on my own grave on the burial lot of my deceased husband, Abraham O. Ehrgood.

"One on the grave of my father, Isaac Kalbach.

"One on the grave of my mother, Susannah Kalbach.

"One on the grave of my sister, Eva Anna Dannahower.

"One on the grave of Daniel J. David Levan, who lived with my father.

"One on the grave of my brother, Charles Adam Kalbach.

"One on the grave of my brother, George William Washington Kalbach.

"One on the grave of my two children, Charlotta and Mabel Matz.

"One on the grave of my three children, Abraham, Isaac and Susannah Ehrgood.

"One on the grave of Sigmund Reider.

### Kalbach's Estate.

"When the slabs designated for graves of my father's lot are ready to be placed, I direct that the two small tombstones on the graves of my sister Mary Elizabeth Kalbach and my brother Isaac Lewis Kalbach be moved to the foot end of George William Washington Kalbach's grave.

"In order to erect the six slabs on the graves on burial lot of my father, Isaac Kalbach, it will be necessary to remove six old tombstones which were placed on said graves at my direction and expenses; and I direct that the said six old tombstones be given by my executors to my brother John Henry Kalbach, provided that he removes the tombstones now on the grave of his son William Thomas Kalbach and places it, re-inscribed, on the grave of my uncle Henry Matz. In case my said brother refuses to accept the said six old tombstones on such condition, then I direct my executors to provide for the grave of my said uncle, Henry Matz, a tombstone similar to that which is now on the grave of Susannah Matz, wife of the said Henry Matz.

"I direct that the tombstone now on the grave of Charlotta and Mabel Matz be moved to the burial lot of William Meyers and there placed on the grave of his two children, and that said stones be re-inscribed.

"*(c)* I direct my executors hereinafter named to pay the funeral expenses of the said Simund Reider upon his death, giving him the same sort of funeral as I have provided for myself and expending no more than $178.75 for his funeral. It is my desire and wish that only the mother and sisters of the said Sigmund Reider be permitted to attend his funeral, and that he be buried in Charles Evans Cemetery on the lot of Abraham O. Ehrgood on which I am to be buried.

"*(d)* I direct my executors hereinafter named to pay all the rest, residue and remainder of said principal to the Reiffton Fire Company of Reiffton, Exeter Township, Berks County, Pennsylvania, its successors and assigns."

5. Petitioners, said trustees, allege their inability and the impossibility to literally perform the testamentary directions contained in section "*b*," above recited. Testimony was submitted in support of this allegation, and from this testimony the further facts are found.

6. The Epp Granite Company, of Reading, Pennsylvania, cannot furnish ten tombstone slabs of the very best flawless Richmond granite, each slab 7 feet long, 42 inches wide and 16 inches high, each slab bordered and carved as detailed, at a cost, including foundation and erection, of $350 for each slab.

7. No other marble or quarryman or firm or other person or concern whatsoever can furnish and erect such slabs at a cost of $350 each.

8. The rough stone, of the type, quality and dimensions stipulated, would cost, to-day, not less than $410 for each slab, and the completed and erected memorial could not be furnished for less than $850.

9. The Epp Granite Company would furnish and erect, at a cost of $350 each, ten slabs of Oglesby granite, approximating in style and quality the Richmond granite, each slab being 6 feet 6 inches long, 3 feet wide and 12 inches high, sand-blasted and finished by hand, the border and ornamentation more simple than stipulated, but approximately the same.

10. Slabs of the length and width stipulated could not be placed over the graves designated, without crowding slab against slab, over the entire width of the lots.

11. The grave of testatrix and those of the three children, Abraham, Isaac and Susanna Ehrgood, and that of Sigmund Reider are on the lot of her deceased husband, Abraham O. Ehrgood, lots 51 and 52, section D 1 sub., Charles Evans Cemetery, Reading, Pennsylvania.

Kalbach's Estate.

12. On the lot of Isaac Kalbach, lot 30, section D, said cemetery, are the graves of Isaac Kalbach, Susannah Kalbach, Eva Anna Dannahower, Daniel J. David Levan, Charles Adam Kalbach, George William Washington Kalbach, and the graves of two children, Mary Elizabeth Kalbach and Isaac Lewis Kalbach, children of Isaac Kalbach.

13. The graves of the two children of testatrix, Charlotta and Mabel Matz, are on the lot of Henry Matz and William Meyers, lot 32, section L, said cemetery.

14. Placing slabs on the said lot of Isaac Kalbach, over the graves designated, will necessitate the removal of five tombstones now in position.

15. The next of kin of Isaac Kalbach, deceased, now living, are Ellen Stamm, a granddaughter, and Mary Tuckey, a great-granddaughter. Both appeared in court and protested against the removal of the existing tombstones and the placing of the slabs directed by the will.

*Discussion.*

Testatrix directs application of the bulk of her estate to the purchase and erection of ten granite slabs or tombstones. If it were possible to carry out the details of her directions and to comply with her wish, our own views of the propriety of such a disposition would not dare interfere with such compliance. However, testimony taken, upon which were based findings of facts 6, 7 and 8, clearly establishes the impossibility of full compliance with the wishes of testatrix. Under the petition presented, the trustees of the fund ask us to declare, *inter alia*, whether, under an application of the *cy pres* doctrine, they may approximate the testamentary directions and details and purchase tombstones as specified in our 9th finding of fact.

*Cy pres*, sometimees called the doctrine of approximation, is a rule of judicial construction, designed to aid the court to ascertain and carry out, as nearly as may be, the intention of the donor: Tincher *v.* Arnold, 147 Fed. Repr. 665, 675. It lay within the province of ecclesiastical courts and became, in their hands, an instrumentality of much good and of far-reaching mischief and fraud. Though followed, it has never been bodily taken into the laws of our State. Gibson, C. J., in Methodist Church *v.* Remington, 1 Watts, 218, 227, speaks of the ecclesiastical administration under this doctrine as "too grossly revolting to the public sense of justice to be tolerated in a country where there is no ecclesiastical establishment." As adopted by us, it is ". . . a reasonable doctrine, by which a well-defined charity, or one where the means of definition are given, may be enforced in favor of the general intent, even where the mode or means provided for by the donor fail by reason of their inadequacy or unlawfulness.

"Our jurisprudence furnishes several illustrations of the doctrine thus restricted: 1 Pa. R. 49; 2 W. & S. 81; 10 Barr, 26; 17 S. & R. 91.

"6. The meaning of the doctrine of *cy pres*, as received by us, is, that when a definite function or duty is to be performed, and it cannot be done in exact conformity with the scheme of the person or persons who have provided for it, it must be performed with as close approximation to that scheme as reasonably practicable; and so, of course, it must be enforced. It is the doctrine of approximation, and it is not at all confined to the administration of charities, but is equally applicable to all devises and contracts wherein the future is provided for, and it is an essential element of equity jurisprudence:" Philadelphia *v.* Girard Heirs, 45 Pa. 9, 28.

Under our law, then, this rule would appear to be applicable only to trusts constituting charities and devises and contracts wherein the future is pro-

Kalbach's Estate.

vided for. See, also, 11 Corpus Juris, 361; Thompson's Estate, 282 Pa. 30, 37, and Kimberly's Estate, 249 Pa. 483.

The trust under the Kalbach will is for the purchase and erection of tombstones. It is not a charity: Todd v. St. Mary's Church, 45 R. I. 282, 120 Atl. Repr. 577; Page on Wills (2nd ed.), pars. 1076 and 1087. It is, furthermore, not a devise or contract providing for the future. It is purely and entirely a trust for private or personal use, to be performed presently, forthwith completed and making no provision for the future. The rule of *cy pres* may not be applied to the interpretation and execution of the trust now before us.

May this court, under its general equity or statutory powers, modify and order an approximation of the testamentary direction? Relative to wills, the function of the court is (1) to determine testator's intent, and (2) to carry out that intent. In ascertaining testator's intent, his words alone must be considered. If his intent can be gathered from these words, nothing may be added, withdrawn or changed. In cases of inaccuracy or mistake, where testator's intent clearly appears from the will at large, words may be transposed, added or eliminated in order to properly express that intent: Cooper's Estate, 150 Pa. 576, 578; Oyster v. Oyster, 100 Pa. 538, 541.

In this testamentary provision there is no uncertainty or doubt. It is clearly and positively expressed, and leaves no doubt as to the intent of testatrix. In this case the rule applies: "The intention being established by the will, the law should adjudge accordingly:" McKeehan v. Wilson, 53 Pa. 74, 77.

Since the provisions of section *(b)*, Item "Third," of this will clearly express testatrix's intent, and that intent is impossible of performance, it remains only for this court to declare the section inoperative. This conclusion will not, however, affect the validity of other parts of the will: Baum's Estate, 260 Pa. 33.

It may be noted that this decision does not in any way interfere with the right of trustees to place over the grave of testatrix a tombstone of size, character and construction in keeping with the funds in hand and as limited by law, without regard to the testamentary provision. It would appear that the paramount purpose of testatrix was to provide tombstones for those who had none, and that her subservient or secondary purpose was to remove several existing stones and have ten of one style, quality and cost. This secondary purpose is now declared inoperative. Against her paramount purpose and the fulfilling of it stand the protests of surviving next of kin of Isaac Kalbach, deceased. They resist the removal of the tombstones on the Kalbach lot, wherein six of the slabs were to be placed. Since tombstones, like heirlooms, pass to the heirs of decedent, are not devisable nor pass as personal property (1 Williams on Executors, 846; Seager v. Bowle, 1 Addams, 541), there would seem to be effect to their opposition. This, again, would render impossible compliance with testatrix's paramount wish. Relative to tombstones for the graves of Sigmund Reider and the five children of testatrix, Charlotta Matz, Mabel Matz, Abraham Ehrgood, Isaac Ehrgood and Susanna Ehrgood, in the absence of valid and legal opposition thereto, we believe the paramount purpose of testatrix should be carried out. The matter of selection of such stones and the prices to be paid will be left to the discretion and judgment of trustees under the limits of law.

And now, to wit, April 16, 1927, in accordance with the foregoing opinion, it is ordered and decreed that section *(b)*, Item "Third," of the last will and testament of Caroline Kalbach, deceased, as set forth in the petition, pursuant to which this decree is made, be and the same is inoperative, and that the

trustees named, to wit, The Berks County Trust Company and Wellington Bertolet, be and hereby are discharged and relieved from fulfilling, or attempting to fulfill, or approximating, the requirements thereof.

From Charles K. Derr, Reading, Pa.