## Cole's Estate.

*N. B. Spangler*, for petitioner.

FLEMING, P. J., September 9, 1930.—This is a proceeding under the Uniform Declaratory Judgments Act, wherein we are asked to interpret and construe the last will and testament of the testatrix, in so far as certain questions, specifically propounded, are concerned. These questions are as follows:

(a) Does Freda Edmiston have an absolute title to the Bishop Street property under the will of the said decedent, and, if not, what title or interest therein does she have under the terms of said will and codicil?

(b) Does Ida Edmiston have a life estate in the Water Street property, and, if not, what interest therein does she have under the last will and testament and codicil of the said decedent?

(c) Is Ida Edmiston entitled to the income of said Water Street property during the term of her natural life?

(d) If she is entitled to the income of said property, has she a right to lease the same and collect the rents thereof, or is this authority vested in the Bellefonte Trust Company under the terms of said will and codicil?

(e) What interest has Freda Edmiston in the Water Street property after the death of Ida Edmiston, should she survive her?

(f) What is the present interest of Freda Edmiston in the Water Street property?

The petition asking for our determination of these questions is that of the Bellefonte Trust Company, executor under the last will and testament of the testatrix, Ida Edmiston and Freda Edmiston being beneficiaries under said will.

The last will and testament to be considered is short, and was evidently written by the testatrix herself.  It is as follows:

"Bellefonte, Pa. Sept 7, 1927

"Bishop St. property and all that is in it to
Freda Edmiston.  Water St. property while liv-
ing to Ida Edmiston at death to go to Freda
Edmiston in trust.
Bellefonte Trust Bank to look after it.

| | |
|---|---|
| Mrs. Ed. Holt, Franklin, Pa | $2000 |
| Cemetery lot | 1000 for |

large & small stones, Name on large stone
Miles Newell.

| | |
|---|---|
| Presbyterian Home, Hollidaysburg | $1000 |
| Ralph Cole, Bellefonte, Pa. | 500 |
| Robert Cole, Camden, N. J | 500 |
| Park College, Missouri | 1000 |

Mr. Robert Coles Cemetery lot perpetual care.
Trust Company Bank to look after business.

MARY NEWELL COLE.

"My funeral expenses taken out first anything over
to be divided between Freda Edmiston and Ida Ed-
miston.  Both of Bellefonte, Pa.

MARY NEWELL COLE.

Witness:  ·
     Earl K. Stock     Cora K. Galbraith."

The petition avers that the testatrix died on February 20, 1930, and that the above will was probated on February 24, 1930, and letters testamentary issued to the Bellefonte Trust Company, of Bellefonte, Pennsylvania, on the same date; that there is sufficient personal property to pay all of the debts of the testatrix and to pay the bequests made to Mrs. Ed. Holt, Presbyterian Home at Hollidaysburg, Pennsylvania, Ralph Cole, Robert Cole and Park College, as well as to procure the stones for the cemetery lot as directed and to provide for perpetual care of the Robert Cole cemetery lot.

The first rule of construction, with respect to either a deed or a will, is to ascertain the intention of the grantor or testator from the four corners of the instrument, giving effect, if possible, to every part of it: Yates's Estate, 281 Pa. 178;  but the ascertainment of intention should be the guide in the construction of wills more than any other instrument: Empson v. Empson, 204 N. Y. S. 118.  "Intention, if legal, is the law of the instrument, the supreme test, the controlling factor, the touchstone of interpretation, and courts look upon it as the guiding or polar star to direct them in construing the instrument.  When such intention is not unlawful and is capable of ascertainment, it must be respected.  Hence the cardinal rule in the construction of wills is to ascertain and give effect to the intention of the testator, where to do so will not be contrary to law, public policy, or some established rule of property:"  Thompson on Construction of Wills (1928), § 41.  See, also, Gunning's Estate (No. 1), 234 Pa. 139;  Stewart's Estate, 253 Pa. 277;  Puterbaugh's Estate, 261 Pa. 235.

The intent of the testator means his actual personal intent, not a mere conventional intent inferred from the use of any set phrase or form of words: Tyson's Estate, 191 Pa. 218;  Moore's Estate, 241 Pa. 253.  The intention to be sought is not that which by inference may be presumed to have existed in the testator's mind, but that which by the words used in the will he has

expressed. Imperfection of expression of testator's intention will not defeat his intention, if it can be clearly ascertained from the will: Hyde v. Rainey, 233 Pa. 540. It is the duty of the court to ascertain the intention of the testator from the words which he has used: Oyster v. Oyster, 100 Pa. 538; Kuntzleman's Estate, 136 Pa. 142; and this without reference to extraneous facts, but to gather this intention, if possible, from the terms of the will itself: Thompson's Estate, 229 Pa. 542. The intention of the testator is to be gathered, if possible, from the language used as applied to the subject matter: Bechtel v. Fetter, 267 Pa. 173; Lippincott's Estate, 276 Pa. 283.

"Bishop St. property and all that is in it to Freda Edmiston." This is a clear, unrestricted and unconditional devise of the Bishop Street property, and a bequest of all of its contents, belonging to the testatrix at the time of her death. To attempt to hold otherwise than that Freda Edmiston took an absolute title thereto would be directly contrary to the authorities cited. We so answer question (a).

"Water St. property while living to Ida Edmiston." The words "while living" plainly indicate that it was not the intention of the testatrix to devise an absolute title in the Water Street property, but to limit such title to the period of the natural life of Ida Edmiston. This intent appears in the subsequent words, "at death to go to Freda Edmiston in trust." A devise or bequest to one with a limitation over to another on the death of the first taker indicates a life estate in the first taker: Todd v. Armstrong, 213 Pa. 570; Rudman's Estate, 244 Pa. 252. We conclude, therefore, in answer to question (b), that Ida Edmiston has a life estate in the Water Street property, and, in answer to question (c), that the said Ida Edmiston is entitled to the income of said Water Street property during her natural life.

The testatrix has added to the paragraph of the will, wherein she disposes of the Bishop Street and Water Street properties, the words "Bellefonte Trust Bank to look after it." That testatrix, by the words "Bellefonte Trust Bank," intended "the Bellefonte Trust Company" cannot be doubted. This was recognized by the register of wills when the statement of the will "Trust Company Bank to look after business" was taken to constitute a nomination of the Bellefonte Trust Company as the executor. That testatrix did not intend the Bellefonte Trust Company to look after the Bishop Street property is evidenced, first, by the clear, unrestricted and unconditional devise of the same, and, secondly, by the use of the singular term "it" and not the plural term "them." The direction "Bellefonte Trust Bank to look after it" is the creation of a testamentary power to the executor, restricting to the extent therein named the life estate created in Ida Edmiston. "The scope and extent of the powers of an executor or testamentary trustee to manage and control the estate are necessarily dependent upon the terms of the will and the object the testator had in view. A life tenant *may* be given power to take possession of, manage and control all of the property in as full manner as the testator could do if living:" Thompson, Construction of Wills (1928), § 591. This power our testatrix did not accord to the life tenant, but gave it to the executor instead. We, therefore, answer question (d) by saying that Ida Edmiston, life tenant, does not have the right, *per se*, to lease the Water Street property and to collect the rents thereof. This authority is duly vested, by the testamentary power conferred, in the Bellefonte Trust Company, which, by implication of law, is answerable to the said Ida Edmiston for the proper management of such property, for proper accounting of sums received therefrom and expended thereon, and for the paying over to the said Ida Edmiston during her natural life of the net income thereof.

The testatrix further provides, concerning the Water Street property, that "at death to go to Freda Edmiston in trust." The testatrix uses the words "in trust," but fails to name the object of the trust.

To constitute a valid testamentary trust there must be a concurrence of (1) language sufficient to sever the legal title from the equitable title; (2) a certain subject, and (3) a definite object. The will should clearly set forth the purpose for which the trust is created, in order that a court of equity can enforce the testator's wishes: Tilden v. Green, 130 N. Y. 29. If it is executory, incomplete, imperfect, or promissory, equity will neither aid nor enforce it: Flying Squadron Foundation v. Crippen (Ind. App.), 141 N. E. 896.

Were we to apply technically the rules of construction which have been laid down concerning the creation of testamentary trusts to this portion of testatrix's will, and to disregard the other portions of the will, and the evident intent of the testatrix as gathered from the four corners of the will itself, we would be compelled to hold that the trust had failed for want of a definite object, and that, as a result thereof, the remainder in the Water Street property, after the death of Ida Edmiston, would pass to the residuary devisees named in the will: Grim's Appeal, 109 Pa. 391. To disregard the other portions of the will, however, or to fail to obtain, if possible, the true intent of the testator from the entire will, would be contrary to the established rules of construction and interpretation. "The intention of the testator unmistakably expressed in his will must control in its interpretation, regardless of well-recognized canons or rules of construction that otherwise might apply. These rules or canons are not controlling, but are merely advisory, and serve not so much to restrict or constrain the judicial mind as simply to guide and indicate probabilities in the absence of countervailing considerations, none of them are to be followed blindly if they lead to subversion of what was clearly the intention of the testator, and they may be wholly disregarded to reach such intent. They should be applied to arrive at the intention of the testator, but not to subvert that intention. They merge in substance into the cardinal rule that the intention of the testator must prevail. In every case the testator's intention, as drawn from a natural and reasonable construction of the instrument as a whole, in connection with all the surrounding circumstances, takes precedent of refinements and distinctions of much subtlety and force:" Thompson on Construction of Wills (1928), § 44; see Patton's Estate, 79 Pa. Superior Ct. 314.

The entire will of the testatrix and the codicil thereto shows that Ida Edmiston and Freda Edmiston, her daughter, were the main objects of testatrix's bounty after certain specific bequests were disposed of. This is true also as to the surrounding circumstances. The testatrix knew that Freda Edmiston was the daughter of Ida Edmiston, and, according to the natural expectancies of life, that Freda Edmiston would survive her mother. To the mother, Ida Edmiston, was given the Water Street property for life, and at her death the same was directed to pass to the daughter, Freda Edmiston. The will having been written by the testatrix herself, with no technical knowledge of trusts or trustees and the essentials of their creation, it is but natural and reasonable to conclude that the addition of the words "in trust" after the devise to Freda Edmiston was mere surplusage. Had testatrix devised this remainder to another, in trust for Freda Edmiston, another intent would have plainly appeared. But she did not do so. She devised it to Freda Edmiston "in trust." Such was a devise of the legal title to her. That she did not intend her to have the equitable title as well cannot be inferred from

any portion of the will or from surrounding circumstances. The entire will and codicil reflects this conclusion. We, therefore, answer question (e) by saying that Freda Edmiston's interest in the Water Street property after the death of Ida Edmiston is an absolute title to said property, and we further answer question (f) by saying that the present interest of Freda Edmiston in the Water Street property is an absolute estate in remainder after the death of Ida Edmiston.

Summing up, our answers to the several questions propounded are:

(a) That Freda Edmiston has an absolute title to the Bishop Street property and all the contents thereof belonging to Mary Newell Cole, at the time of her death.

(b) That Ida Edmiston has a life estate in the Water Street property, subject to the testamentary power vested in the Bellefonte Trust Company to look after and manage the same during her lifetime.

(c) That Ida Edmiston is entitled to the net income of said Water Street property during the term of her natural life.

(d) That Ida Edmiston does not have the right to lease said Water Street property nor to collect the rents thereof, this power having been accorded to the Bellefonte Trust Company by the last will and testament of the testatrix.

(e) That Freda Edmiston will have an absolute title to the Water Street property after the death of Ida Edmiston, should she survive her.

(f) That the present interest of Freda Edmiston in the Water Street property is an estate in remainder, after the death of Ida Edmiston.

We see no reason why the wish of Ida Edmiston and Freda Edmiston that the bequests named in the will to persons and parties other than themselves be paid without deduction, except for collateral tax, should not be fulfilled. Further, we state, that inasmuch as Ida Edmiston and Freda Edmiston are named as residuary legatees by the codicil, we see no reason why, if they so desire, such collateral tax should not be paid by the estate, instead of by the respective legatees. We do not direct the same to be so done, but, in view of the statements contained in paragraph four of the petition, we offer such suggestion.

And now, September 9, 1930, judgment is entered in accordance with the above opinion. Costs to be paid by the estate.

From S. D. Gettig, Bellefonte, Pa.